FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 03 2004 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DAVID MILLS,

                          Plaintiff,   (S.I.)   **COMPLAINT**
                                       **JURY DEMANDED**
   -against-

CROWN CASTLE INTERNATIONAL CORP., CROWN
CASTLE USA, INC., SBA COMMUNICATIONS
CORP., SBA TELECOMMUNICATIONS INC., SBA
NETWORK SERVICES INC., HAMPTON DRAINAGE
& PAVING CORP., JAMES TULLY, JANE TULLY,
AND T-MOBILE USA, INC.

                          Defendants.
-----------------------------------------------------------------X

CV 04 0886

PLATT, J.

ORENSTEIN, M.

     Plaintiff, by his attorneys, **BRUCE MONTAGUE & PARTNERS**, complaining of the Defendants, respectfully alleges, upon information and belief, as follows:

### JURISDICTION

1. Jurisdiction over this action is based upon 28 U.S.C. 1332 (a)(1).

2. That the amount in controversy exceeds $75,000.

3. That at all times herein mentioned, Plaintiff **DAVID MILLS** was, and still is, a resident of the State of New Jersey.

4. That at all times herein mentioned, Defendant **CROWN CASTLE INTERNATIONAL CORP.** (hereinafter referred to as **CCIC**) was and is incorporated in the State of Delaware.

5. That at all times herein mentioned, Defendant **CCIC** maintained a principal place of business in the State of Texas.

6. That at all times herein mentioned, Defendant **CCIC** contracted to supply services in the State of New York.

7. That at all times herein mentioned, Defendant **CCIC** was authorized to do business in the State of New York

2

8. That at all times herein mentioned, Defendant **CCIC** committed a tortious act within the State of New York.

9. That at all times herein mentioned, Defendant **CCIC** regularly does and/or solicits business in the State of New York.

10. That at all times herein mentioned, Defendant **CCIC** derives substantial revenue from goods used and/or services rendered in the State of New York.

11. That at all times herein mentioned, Defendant **CROWN CASTLE USA, INC.** (hereinafter referred to as **CC USA**) is a wholly owned subsidiary of Defendant **CCIC**.

12. That at all times herein mentioned, Defendant **CC USA** maintains a principal place of business in the State of Pennsylvania.

13. That at all times herein mentioned, Defendant **CC USA** was authorized to do business in the State of New York

14. That at all times herein mentioned, Defendant **CC USA** committed a tortious act within the State of New York.

15. That at all times herein mentioned, Defendant **CC USA** regularly does and/or solicits business in the State of New York.

16. That at all times herein mentioned, Defendant **CC USA** derives substantial revenue from goods used and/or services rendered in the State of New York.

17. That at all times herein mentioned, Defendant **SBA COMMUNICATIONS CORPORATION** (hereinafter referred to as **SBA COMM**) was and is incorporated in the State of Florida.

18. That at all times herein mentioned, Defendant **SBA COMM** maintained a principal place of business in the State of Florida.

19. That at all times herein mentioned, Defendant **SBA COMM** transacted business within the State of New York.

20. That at all times herein mentioned, Defendant **SBA COMM** contracted to supply services in the State of New York.

21. That at all times herein mentioned, Defendant **SBA COMM** committed a tortious act within the State of New York.

22. That at all times herein mentioned, Defendant **SBA COMM** regularly does and/or solicits business in the State of New York.

23. That at all times herein mentioned, Defendant **SBA COMM** derives substantial revenue from goods used and/or services rendered in the State of New York.

24. That at all times herein mentioned, Defendant **SBA TELECOMMUNICATIONS, INC.** (hereinafter referred to as **SBA TEL**) is a wholly owned subsidiary of Defendant **SBA COMM.**

25. That at all times herein mentioned, Defendant **SBA TEL** was and is incorporated in the State of Florida.

26. That at all times herein mentioned, Defendant **SBA TEL** maintained a principal place of business in the State of Florida.

27. That at all times herein mentioned, Defendant **SBA TEL** transacted business within the State of New York.

28. That at all times herein mentioned, Defendant **SBA TEL** contracted to supply services in the State of New York.

29. That at all times herein mentioned, Defendant **SBA TEL** committed a tortious act within the State of New York.

30. That at all times herein mentioned, Defendant **SBA TEL** regularly does and/or solicits business in the State of New York.

31. That at all times herein mentioned, Defendant **SBA TEL** derives substantial revenue from goods used and/or services rendered in the State of New York.

32. That at all times herein mentioned, **SBA NETWORK SERVICES, INC.** (hereinafter referred to as **SBA NET**) is a wholly owned subsidiary of Defendant **SBA TEL**

33. That at all times herein mentioned, Defendant **SBA NET** was and is incorporated in the State of Florida.

34. That at all times herein mentioned, Defendant **SBA NET** maintained a principal place of business in the State of Florida.

35. That at all times herein mentioned, Defendant **SBA NET** transacted business within the State of New York.

36. That at all times herein mentioned, Defendant **SBA NET** contracted to supply services in the State of New York.

37. That at all times herein mentioned, Defendant **SBA NET** committed a tortious act within the State of New York.

38. That at all times herein mentioned, Defendant **SBA NET** regularly does and/or solicits business in the State of New York.

39. That at all times herein mentioned, Defendant **SBA NET** derives substantial revenue from goods used and/or services rendered in the State of New York.

40. That at all times herein mentioned, Defendant **HAMPTON DRAINAGE & PAVING CORP.** was incorporated in the State of New York.

41. That at all times herein mentioned, Defendant **HAMPTON DRAINAGE & PAVING CORP.** was maintained a principal place of business in the State of New York.

42. That at all times herein mentioned, Defendant **HAMPTON DRAINAGE & PAVING CORP.** conducted business in the State of New York.

43. That at all times herein mentioned, Defendant **JAMES TULLY** was a resident of the County of Suffolk, State of New York.

44. That at all times herein mentioned, Defendant **JANE TULLY** was a resident of the County of Suffolk, State of New York.

45. That at all times herein mentioned, Defendant **T-MOBILE USA, INC.** (hereinafter referred to as **T-MOBILE**) was and is incorporated in the State of Delaware

46. That at all times herein mentioned, Defendant **T-MOBILE** maintained a principal place of business in the State of Washington.

47. That at all times herein mentioned, Defendant **T-MOBILE** transacted business within the State of New York.

48. That at all times herein mentioned, Defendant **T-MOBILE** contracted to supply services in the State of New York.

49. That at all times herein mentioned, Defendant **T-MOBILE** committed a tortious act within the State of New York.

50. That at all times herein mentioned, Defendant **T-MOBILE** regularly does and/or solicits business in the State of New York.

51. That at all times herein mentioned, Defendant **T-MOBILE** derives substantial revenue from goods used and/or services rendered in the State of New York.

### VENUE

52. Venue of this action is based upon 28 U.S.C. 1391(a)(2)

53. The events giving rise to this claim occurred in the Eastern District of the State of New York in the County of Suffolk.

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF DAVID MILLS

54. That at all times herein mentioned, there existed a cell tower and/or monopole and/or structure (hereinafter referred to as "structure") over 30 feet high, located at 42 Potter Avenue, in the County of Suffolk, State of New York.

55. That at all times herein mentioned, Defendant **HAMPTON DRAINAGE & PAVING CORP.** was the owner the parcel of land known as 42 Potter Avenue, in the County of Suffolk, State of New York.

56. That at all times herein mentioned, Defendant **HAMPTON DRAINAGE & PAVING CORP.** was the owner the building, property and premises located at 42 Potter Avenue, in the County of Suffolk, State of New York.

57. That at all times herein mentioned, Defendant **HAMPTON DRAINAGE & PAVING CORP.** was the owner of the buildings, towers, monopoles and structures located on 42 Potter Avenue in the County of Suffolk, State of New York.

58. That at all times herein mentioned, Defendant **HAMPTON DRAINAGE & PAVING CORP.** operated, maintained, managed, and controlled buildings and appurtenances on the aforementioned property, including but not limited to the aforementioned "structure".

59. That at all times herein mentioned, Defendants **JAMES TULLY** and/or **JANE TULLY** were the owner(s) of the parcel of land known as 42 Potter Avenue in the County of Suffolk, State of New York.

60. That at all times herein mentioned, Defendants **JAMES TULLY** and/or **JANE TULLY** were the owner(s) of the building, property and premises located at 42 Potter Avenue in the County of Suffolk, State of New York.

61. That at all times herein mentioned, Defendants **JAMES TULLY** and/or **JANE TULLY** were the owner(s) of the buildings, towers, monopoles and structures located on 42 Potter Avenue in the County of Suffolk, State of New York.

62. That at all times herein mentioned, Defendants **JAMES TULLY** and/or **JANE TULLY** operated, maintained, managed, and controlled buildings and appurtenances on the aforementioned property, including but not limited to the aforementioned "structure".

63. That at all times herein mentioned, Defendants **JAMES TULLY** and/or **JANE TULLY** and/or Defendant **HAMPTON DRAINAGE & PAVING CORP.** entered into a contract and/or agreement with Defendant **CCIC**.

64. That said contract and/or agreement did allow Defendant **CCIC** to build and/or develop one or more communications towers and/or structures on the land known as 42 Potter Avenue.

65. That said contract and/or agreement allowed Defendant **CCIC** to install all lines, wires, poles, supports, electrical conductors, antennas, platforms and all other telecommunications equipment on the aforesaid structure.

66. That at all times herein mentioned, Defendant **JAMES TULLY, JANE TULLY** and/or Defendant **HAMPTON DRAINAGE & PAVING CORP.** entered into a contract and/or agreement with Defendant **CC USA.**

67. That said contract and/or agreement did allow Defendant **CC USA** to build and/or develop one or more communications towers and/or structures on the land known as 42 Potter Avenue.

68. That said contract and/or agreement allowed Defendant **CC USA** to install all lines, wires, poles, supports, electrical conductors, antennas, platforms and all other telecommunications equipment on the aforesaid structure.

69. That at all times herein mentioned, Defendant **CCIC** entered into a contract with Defendant **T-MOBILE** to erect upon the aforesaid structure a cellular, digital or other communication facility.

70. That at all times herein mentioned, Defendant **CC USA** entered into a contract with Defendant **T-MOBILE** to erect upon the aforesaid structure a cellular, digital or other communication facility.

71. That at all times herein mentioned, Defendant **CCIC** was the general contractor for the performance of the aforementioned contract with **T-MOBILE.**

72. That at all times herein mentioned, Defendant **CC USA** was the general contractor for the performance of the aforementioned contract with **T-MOBILE.**

73. That at all times herein mentioned, Defendant **CCIC** subcontracted for the erection of the aforesaid communications site to DJK Construction, Inc.

74. That at all times herein mentioned, Defendant **CC USA** subcontracted for the erection of the aforesaid communications site to DJK Construction, Inc.

75. That at all times herein mentioned, Defendant **CCIC** entered into a contract with Defendant **SBA COMM** for Defendant **SBA COMM** to act as general contractor for the erection of the aforesaid communications facility.

76. That at all times herein mentioned, Defendant **CCIC** entered into a contract with Defendant **SBA TEL** for **SBA TEL** to act as general contractor for the erection of the aforesaid communications facility.

77. That at all times herein mentioned, Defendant **CCIC** entered into a contract with **SBA NET** for **SBA NET** to act as general contractor for the erection of the aforesaid communications facility.

78. That at all times herein mentioned, Defendant **CC USA** entered into a contract with **SBA COMM** for **SBA COMM** to act as general contractor for the erection of the aforesaid communications facility.

79. That at all times herein mentioned, Defendant **CC USA** entered into a contract with **SBA TEL** for **SBA TEL** to act as general contractor for the erection of the aforesaid communications facility.

80. That at all times herein mentioned, Defendant **CC USA** entered into a contract with **SBA NET** for **SBA NET** to act as general contractor for the erection of the aforesaid communications facility.

81. That at all times herein mentioned, Defendant **SBA COMM** was the general contractor for the erection of the Defendant **T-MOBILE** communications facility.

82. That at all times herein mentioned, Defendant **SBA TEL** was the general contractor for the erection of the Defendant **T-MOBILE** communications facility.

83. That at all times herein mentioned, Defendant **SBA NET** was the general contractor for the erection of the Defendant **T-MOBILE** communications facility.

84. That at all times herein mentioned, Defendant **SBA COMM** subcontracted for the erection of the communications facility to DJK Construction, Inc.

85. That at all times herein mentioned, Defendant **SBA TEL** subcontracted for the erection of the communications facility to DJK Construction, Inc.

86. That at all times herein mentioned, Defendant **SBA NET** subcontracted for the erection of the communications facility to DJK Construction, Inc.

87. That at all times herein mentioned, DJK Construction, Inc. was hired by one or more of the Defendants to erect said communications facility upon the aforesaid structure at 42 Potter Avenue, in the County of Suffolk, State of New York.

88. That at all times herein mentioned, Defendant **CCIC** operated, maintained, managed, and controlled said structure at the aforesaid location.

89. That at all times herein mentioned, Defendant **CC USA** operated, maintained, managed, and controlled said structure at the aforesaid location.

90. That at all times herein mentioned, Defendant **SBA COMM** operated, maintained, managed, and controlled said structure at the aforesaid location.

91. That at all times herein mentioned, Defendant **SBA TEL** operated, maintained, managed, and controlled said structure at the aforesaid location.

92. That at all times herein mentioned, Defendant **SBA NET** operated, maintained, managed, and controlled said structure at the aforesaid location.

93. That at all times herein mentioned, Defendant **HAMPTON DRAINAGE & PAVING CORP.** operated, maintained, managed, and controlled said structure at the aforesaid location.

94. That at all times herein mentioned, Defendants **JAMES TULLY** and/or **JANE TULLY** operated, maintained, managed, and controlled said structure at the aforesaid location.

95. That at all times herein mentioned, Defendant **T-MOBILE** operated, maintained, managed, and controlled said structure at the aforesaid location.

96. That at all times herein mentioned, Defendant **T-MOBILE** was the lessee of said structure at the aforesaid location.

97. That at all times herein mentioned, Defendant **T-MOBILE** was the lessee of the communications facility being erected upon the aforesaid structure and premises.

98. That at all times herein mentioned, Defendant **HAMPTON DRAINAGE & PAVING CORP.** hired and/or retained DJK Construction Inc. to perform construction altering, repairing, work, labor and/or other work upon the aforesaid structure.

99. That at all times herein mentioned, Defendants **JAMES TULLY** and/or **JANE TULLY** hired and/or retained DJK Construction Inc. to perform construction altering, repairing, work, labor and/or other work upon the aforesaid structure.

100. That at all times herein mentioned, Defendant **T-MOBILE** hired and/or retained DJK Construction Inc. to perform construction altering, repairing, work, labor and/or other work upon the aforesaid structure.

101. That at all times herein mentioned, pursuant to a written contract and/or agreement, DJK Construction, Inc. was hired and/or retained to perform construction altering, repairing, work, erecting, labor and/or other work upon the aforesaid structure by one or more Defendants.

102. That at all times herein mentioned, and on, or prior to, May 30, 2003, the Defendants, their agents, licensees, servants and/or employees were engaged in performing construction altering, repairing, work, labor and/or other work upon the aforesaid structure at the aforesaid location.

103. That at all times herein mentioned, the Defendants, their agents, servants and/or employees had the duty to provide the Plaintiff with a safe place to work so as to avoid harm to the Plaintiff.

104. That at all times herein mentioned, the Defendants, their agents, servants and/or employees had the non-delegable duty to see that the work site was kept reasonably safe and free of dangers and hazards to those workers lawfully thereat, specifically the Plaintiff herein.

105. That at all times herein mentioned, the Defendants, their agents, servants and/or employees had the non-delegable duty to provide Plaintiff with proper safety equipment and/or other devices so as to provide Plaintiff with proper protection.

106. That at all times herein mentioned, Defendant **CCIC** had both the right and authority to control all work being performed upon said structure.

107. That at all times herein mentioned, Defendant **SBA COMM** had both the right and authority to control all work being performed upon said structure.

108. That at all times herein mentioned, Defendant **SBA TEL** had both the right and authority to control all work being performed upon said structure.

109. That at all times herein mentioned, Defendant **SBA NET** had both the right and authority to control all work being performed upon said structure.

110. That at all times herein mentioned, Defendant **HAMPTON DRAINAGE & PAVING CORP.** had both the right and authority to control all work being performed upon said structure.

111. That at all times herein mentioned, Defendants **JAMES TULLY** and/or **JANE TULLY** had both the right and authority to control all work being performed upon said structure.

112. That at all times herein mentioned, Defendant **T-MOBILE** had both the right and authority to control all work being performed upon said structure.

113. That at all times herein mentioned, Plaintiff **DAVID MILLS** was an employee of DJK Construction, Inc.

114. That at all times herein mentioned, Plaintiff **DAVID MILLS** was lawfully upon the aforesaid premises and structure.

115. That on or about May 30, 2003, and at all times herein mentioned, Plaintiff **DAVID MILLS** was lawfully working upon said structure at the aforesaid location.

116. That on or about May 30, 2003, and at all times herein mentioned, Plaintiff **DAVID MILLS** was lawfully working upon said structure with the consent, knowledge, and permission of all Defendants.

117. That on or about May 30, 2003, Plaintiff **DAVID MILLS** was erecting said communications facility on the aforesaid structure.

118. That said communications facility to be erected upon the aforesaid structure was at a height exceeding fifteen (15) feet.

119. That on or about May 30, 2003, there existed a pulley system used within a hoisting mechanism at said structure for employees to use while working upon said structure.

120. That on or about May 30, 2003 Plaintiff **DAVID MILL** fell from the aforesaid structure.

121. That on or about May 30, 2003, while Plaintiff **DAVID MILLS** was lawfully, carefully and responsibly working upon said structure at a height, he was caused to fall from said structure when a portion of the hoisting system broke.

122. That on or about May 30, 2003, during the erection of said communications facility at the aforesaid structure and premises, Plaintiff **DAVID MILLS** fell from a height exceeding fifteen (15) feet.

123. That as a result of said fall, Plaintiff **DAVID MILLS** was seriously injured.

124. That as a result of said fall, Plaintiff **DAVID MILLS** sustained multiple fractures.

125. That as a result of said fall, Plaintiff **DAVID MILLS** underwent surgical procedures.

126. That by reason of the foregoing, Plaintiff **DAVID MILLS** has been unable to attend to his usual occupation and avocation.

127. That said accident was caused by reason of the negligence, carelessness and recklessness of the Defendants, their agents, servants, licensees and/or employees in the ownership, operation, management, maintenance, direction, supervision, possession, control, construction, rehabilitation and/or alteration of said structure.

128. That the Defendants, their agents, servants and/or employees were negligent, reckless and careless in the ownership, operation, maintenance, control, possession, supervision, direction, construction, inspection, management, renovation, rehabilitation, erection and/or alteration of said cell tower, monopole and/or structure; in failing to provide the Plaintiff with a safe place to work; in failing to provide Plaintiff with a hazard free workplace; in failing to provide Plaintiff with a proper, appropriate and safe elevated working surface and/or pulley so fixed, secured and/or maintained and braced so as to prevent Plaintiff from falling from same; in not using a proper rope under the circumstances then and there prevailing; in not using a metal rope and/or other type of stronger rope although the accident was foreseeable; in failing to properly secure said rope; in failing to provide adequate safety devices; in not providing any safety railing(s); in improperly and/or negligently securing safety railing(s); in failing to provide Plaintiff with proper and approved safety devices so placed, fixed and/or secured so as to afford proper protection to Plaintiff; in failing to prevent plaintiff from falling; in failing to provide Plaintiff with safety belts, safety ropes, safety harnesses and/or other safety devices that would have prevented Plaintiff from falling; in failing

to provide Plaintiff with netting and/or other devices so as to prevent the plaintiff from falling; in failing to properly control, direct and/or supervise Plaintiff with proper safety devices so placed as to afford proper protection to Plaintiff lawfully working thereat; in failing to properly inspect the work area on the date of the accident and prior thereto to see that said work area contained proper and approved safety devices and that said work area was safe; in failing to have safety meetings; in not taking any measures whatsoever to diminish the risk posed by said dangerous and hazardous condition(s) although the danger was foreseeable; in violating the applicable provisions of the Labor Law of the State of New York, the Industrial Code of the State of New York and the provisions of the Occupational Safety & Health Administration as they pertain to construction, erection, demolition, repairing, altering, and/or pointing of a building or structure; and the Defendants were otherwise negligent, reckless and careless under the circumstances then and there prevailing.

129. That on May 30, 2003 a representative of defendant **SBA COMM** was at the worksite prior to and at the time of the accident.

130. That on May 30, 2003 a representative of defendant **SBA TEL** was at the worksite prior to and at the time of the accident.

131. That on May 30, 2003 a representative of defendant **SBA NET** was at the worksite prior to and at the time of the accident.

132. That at the time of said accident, Plaintiff was involved in an activity that constitutes construction, erection, demolition, repairing, altering, painting, cleaning, and/or pointing of a building and/or structure.

133. That at the time of said accident, Plaintiff was not involved in routine maintenance of said building and/or structure.

134. That at said date and time, Plaintiff was caused to fall and be injured due to the above-mentioned dangerous and hazardous condition(s) existing thereat.

135. That Defendants, their agents, servants, licensees and/or employees had actual notice of the aforesaid dangerous and hazardous condition(s) before the accident alleged herein.

136. That Defendants, their agents, servants, licensees and/or employees had constructive notice of the aforesaid dangerous and hazardous condition(s) for same had existed for a long period of time prior to said accident.

137. That Defendants, their agents, servants, licensees and/or employees created said dangerous and hazardous condition(s) existing thereat.

138. That the aforesaid accident and the injuries resulting therefrom, were caused solely and wholly by reason of the negligence of the Defendants, their agents, servants and/or employees without any fault, want of care or culpable conduct on the part of the Plaintiff contributing thereto.

139. That Defendants are liable under the doctrine of res ipsa loquitor.

140. That by reason of the foregoing, the Plaintiff has been rendered sick, sore, lame, maimed and disabled, and so remains; that he has been unable to attend to his usual vocation and activities resulting in losses, including but not limited to, lost wages, and that he has been obliged to expend and will in the future expend sums of money for medical aid and attention.

141. That by reason of the foregoing, Plaintiff **DAVID MILLS** has been damaged in the amount of THIRTY MILLION ($30,000,000.000) DOLLARS.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF DAVID MILLS

142. Plaintiff **DAVID MILLS** repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "141", inclusive with the same force and effect as though set forth and pleaded at length herein.

143. That on or about May 30, 2003, there existed, in full force and effect, within the State of New York, Section 200 of the Labor Law of the State of New York.

144. That the aforesaid dangerous, hazardous and defective condition(s) existing upon said location was the proximate cause of Plaintiff's accident and injuries.

145. That the aforesaid defective and/or dangerous condition(s) existing thereat were not readily observable

146. That Defendants, their agents, servants, employees, and/or licensees had a duty to protect the Plaintiff from said defective and/or dangerous condition(s) thereat.

147. That by reason of the foregoing, the Defendants violated Section 200 of the Labor Law of the State of New York.

148. That by reason of the foregoing, Plaintiff has been damaged in the amount of THIRTY MILLION ($30,000,000.000) DOLLARS.

### AS AND FOR A THIRD CAUSE OF ACTION
### ON BEHALF OF DAVID MILLS

149. Plaintiff **DAVID MILLS** repeats, reiterates and realleges each and every allegation contained Paragraphs "1" through "148", inclusive with the same force and effect as though fully set forth and pleaded at length herein.

150. That on or about May 30, 2003, there existed, in full force and effect, within the State of New York, Section 240 of the Labor Law of the State of New York.

151. That by reason of the foregoing, the Defendants violated Section 240 of the Labor Law of the State of New York.

152. That said statutory violation was the proximate cause of Plaintiff's injuries.

153. That by reason of the foregoing, Defendants are liable and/or strictly liable to Plaintiff.

154. That by reason of the foregoing, the Plaintiff has been damaged in the amount of THIRTY MILLION ($30,000,000.000) DOLLARS

### AS AND FOR A FOURTH CAUSE OF ACTION
### ON BEHALF OF DAVID MILLS

155. Plaintiff **DAVID MILLS** repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "154", inclusive with the same force and effect as though fully set forth and pleaded at length herein.

156. That on or about May 30, 2003, there existed, in full force and effect, within the State of New York, Rule 23 of the Industrial Code of the State of New York.

157. That by reason of the foregoing, the Defendants violated the following sections of Rule 23 of the Industrial Code of the State of New York (23-1.5; 23-1.7; 23-1.8; 23-1.15; 23-1.16; 23-1.17; 23-1.19; 23-1.21; 23-1.22; 23-1.24; 23-1.30; 23-6.1; 23-6.2; 23-7.1; 23-7.2;).

158. That said statutory violation(s) were the proximate cause of Plaintiff's injuries.

159. That by reason of the foregoing, Defendants are liable and/or strictly liable to Plaintiff.

160. That by reason of the foregoing, the Plaintiff has been damaged in the amount of THIRTY MILLION ($30,000,000.000) DOLLARS

### AS AND FOR A FIFTH CAUSE OF ACTION
### ON BEHALF OF DAVID MILLS

161. Plaintiff **DAVID MILLS** repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "160", inclusive with the same force and effect as though fully set forth and pleaded at length herein.

162. That on or about May 30, 2003, there existed, in full force and effect, within the State of New York, Section 241 of the Labor Law of the State of New York.

163. That by reason of the foregoing, the Defendants violated Section 241 of the Labor Law of the State of New York.

164. That said statutory violation was the proximate cause of Plaintiff's injuries.

165. That by reason of the foregoing, Defendants are liable and/or strictly liable to Plaintiff.

166. That by reason of the foregoing, Plaintiff has been damaged in the amount of THIRTY MILLION ($30,000,000.000) DOLLARS

**WHEREFORE**, Plaintiff **DAVID MILLS** demands judgment against the Defendants in the amount of THIRTY MILLION ($30,000,000.000) DOLLARS on the First Cause of Action; in the amount of THIRTY MILLION ($30,000,000.000) DOLLARS on the Second Cause of Action; in the amount of THIRTY MILLION ($30,000,000.000) DOLLARS on the Third Cause of Action; in the amount of THIRTY MILLION ($30,000,000.000) DOLLARS on the Fourth Cause of Action; and in the amount of THIRTY MILLION ($30,000,000.000) DOLLARS on the Fifth Cause of Action, together with the costs and disbursements of this action.

Dated: Bayside, NY
      March 2, 2004

Yours, etc,

_____
CRAIG IAN GARDY (CG 8397)
Bruce Montague & Partners
Attorneys for Plaintiff
DAVID MILLS
212-45 26th Avenue
Suite #7
Bayside, NY 11360
718-279-7555